1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN BRADLEY FOUTS,

                Plaintiff,

   v.

MEDICAL DIRECTOR OF
WASHINGTON CORRECTIONS
CENTER, et al.,

                Defendants.

CASE NO. 3:23-CV-05565-LK-BAT

ORDER ADOPTING REPORT AND
RECOMMENDATION AS
MODIFIED

This matter comes before the Court on United States Magistrate Judge Brian A. Tsuchida's Report and Recommendation ("R&R"), Dkt. No. 13, and pro se Plaintiff Nathan Fouts' objections, Dkt. No. 14. The Court overrules Mr. Fouts' objections and dismisses his second amended complaint. However, leave to amend is appropriate. Judge Tsuchida's R&R is accordingly adopted as modified.

## I.      BACKGROUND

Mr. Fouts is currently detained at the Mason County Jail, but the allegations in his complaint relate to his October 2018 to May 2022 incarceration at Washington Corrections Center,

1    Coyote Ridge Corrections Center, and Washington State Penitentiary. Dkt. No. 12 at 3–4, 6. The

2    second amended complaint is the operative pleading in this case. Dkt. No. 12. The Court

3    nonetheless briefly recounts the previous two generations of Mr. Fouts' complaint to contextualize

4    Judge Tsuchida's recommendation that this case be dismissed for repeated failure to state a claim.

5    **A.      Original Complaint and Motion to Appoint Counsel**

6            This action centers on the allegedly inadequate medical treatment Mr. Fouts received from

7    prison staff between October 31, 2018 and May 23, 2022. Dkt. No. 7 at 7–8. Due to his Perthes

8    Disease,[1] Mr. Fouts has a "metal pole" in his left leg that "causes [him] great pain." Dkt. No. 7 at

9    7. In his original complaint, he alleged that prison medical staff left him in pain by "constantly

10   giving [him] psych meds" because they "take 4-6 weeks to take full effect." *Id.* at 8; *see also id.* at

11   13 ("I kept kiting them and telling them I needed som[e]thing [n]ow for pain[, n]ot 4-6 weeks later.

12   . . . They knowingly left me in pain.").

13          Mr. Fouts asserted Section 1983 claims against (Count 1) Governor Jay Inslee for failing

14   to properly train and hire Department of Corrections medical staff; (Count 2) the State of

15   Washington for failing to provide adequate health care and failing to properly train medical staff;

16   (Count 3) the warden of Coyote Ridge Corrections Center for failing to properly train staff; (Count

17   4) the warden of Washington Corrections Center for failing to properly train staff; (Count 5) the

18   warden of Washington State Penitentiary for failing to properly train staff; (Count 6) the medical

19   director of Coyote Ridge Corrections Center for failing to properly train staff; (Count 7) the medical

20   director of Washington Corrections Center for failing to properly train staff; and (Count

21

22   _____

     [1] Also referred to as Legg-Calve-Perthes Disease, this condition "is a disorder of the hip in young children that usually
     occurs between the ages of 4 and 10." *Perthes Disease (Legg-Calve-Perthes Disease)*, Johns Hopkins Medicine,

23   https://www.hopkinsmedicine.org (last visited Sept. 5, 2023). The disease essentially weakens the head of the femur
     bone by interrupting blood supply to that area. *Id.* As a result, the head of the femur can fracture or "complete[ly]

24   collapse." *Id.* Although the blood supply eventually returns to the area, the bone may reform in a different shape and
     lead to degenerative joint disease. *Id.*

8) the medical director of Washington State Penitentiary for failing to properly train staff. Dkt. No. 7 at 7, 9, 12–14.  For Counts 3, 4, 5, 6, 7, and 8, Mr. Fouts indicated that he did not know the name of the wardens or medical directors. *Id.* at 12–14.

Judge Tsuchida screened the complaint under Sections 1915A and 1915(e)(2) because Mr. Fouts is a prisoner proceeding in forma pauperis. Dkt. No. 6. In doing so, he identified several deficiencies in Mr. Fouts' complaint. First, Mr. Fouts failed to allege facts showing that the individual defendants caused or personally participated in causing his injury. Dkt. No. 9 at 2. Second, a Section 1983 defendant cannot be liable based solely on his or her supervisory responsibility. *Id.* at 2–3. Third, Mr. Fouts' claims against Governor Inslee and the State of Washington were barred by the Eleventh Amendment. *Id.* at 3. And last, any claims based on acts occurring between October 31, 2018 and June 19, 2020 were time-barred under Washington's three-year statute of limitations. *Id.* at 3–4.

Judge Tsuchida also denied Mr. Fouts' motion to appoint counsel because his complaint did not present the exceptional circumstances necessary for the Court to grant that relief. Dkt. Nos. 5, 8. Mr. Fouts demonstrated a sufficient ability to articulate his claims (which did not involve complex legal issues) without an attorney, and the deficiencies identified in his complaint suggested a low likelihood of success on the merits. Dkt. No. 8 at 2.

**B.    First Amended Complaint**

Mr. Fouts filed an amended complaint. Dkt. No. 10. There he alleged Eighth Amendment deliberate indifference claims against (Count 1) the medical directors of Washington Corrections Center, Washington State Penitentiary, and Coyote Ridge Corrections Center; (Count 2) the wardens of those institutions; (Count 3) the Department of Corrections; and (Count 4) "Health Care D[e]l[i]very Systems." *Id.* at 7, 12–13, 15. Mr. Fouts again indicated that he did not know the names of the medical directors and wardens. *Id.* at 3–4.

He did, however, allege conduct occurring within the statute of limitations. Between June 20, 2020 and January 12, 2021, he was seen by a "[D]octor Jane Doe at least once a week for [his] chronic pain" while at Coyote Ridge, but this doctor "would always go back or ref[er] to a medication that [he] already had and did [n]ot work." *Id.* ("They would say I had to exhaust the pill. And what that means is I would have to wait 4-6 weeks [for] it to come[] into full effect wh[ile I was] left [i]n pain the whole time. [A]nd then when the 6 weeks was up they would up the milligram in meds."). According to Mr. Fouts, doctors refused to prescribe hydrocodone or other more potent pain relievers due to his history of drug abuse. *Id.*

This treatment plan allegedly persisted at Washington State Penitentiary. Although a "Nurse Jane Doe" apparently "put" Mr. Fouts "in front of the Board" in the hopes of obtaining Gabapentin, the Board ultimately refused to approve that medication. *Id.* at 9–10. Between June 21, 2021 and May 23, 2022, while Mr. Fouts was at Washington Corrections Center, yet another "Nurse Jane Doe" refused to treat Mr. Fouts with stronger pain medication and instead "persisted [with] a course of action that did not work[.]" *Id.* at 10. Mr. Fouts contended that the medical directors at all three facilities engaged in "wanton infliction of pain by rev[i]ewing [his] cha[r]ts and [n]ot letting [him] have outside help from [a d]octor." *Id.* As for the wardens, Mr. Fouts claimed that he grieved the medication issue "all the way to [them]" to no avail. *Id.* at 12. He alleged that they "did [n]othing in their power to change [his] situation" and therefore "inflict[ed] . . . wanton pain." *Id.* at 12 ("The wardens continued to let medical staff continue a course of action with medication that did [n]ot work.").

Judge Tsuchida found the amended complaint deficient. Dkt. No. 11. Although Mr. Fouts alleged that several Jane Doe staff members failed to prescribe effective medication, he still failed to state a Section 1983 claim against the medical directors because they cannot be liable under a respondeat superior theory. *Id.* at 2. Judge Tsuchida accordingly instructed Mr. Fouts to file a

second amended complaint naming the medical personnel who failed to provide adequate treatment and explaining how each defendant's conduct violated Mr. Fouts' rights. *Id.* at 2–3. He also made clear that this requirement applied with equal force to the claims against the wardens: "Plaintiff must . . . provide facts establishing [that] the wardens engaged in conduct that violated his rights, rather than being held liable based upon their supervisory position, or negligence." *Id.* at 3. And finally, to the extent Mr. Fouts based his claim against the wardens on their failure to comply with grievance procedures or their failure to resolve a grievance in his favor, Judge Tsuchida noted that such a claim is not actionable. *Id.*[2]

## C.    Second Amended Complaint

Mr. Fouts filed a second amended complaint. Dkt. No. 12. He now alleges Fourteenth Amendment "right to [adequate] medical care" claims against (Count 1) the unnamed medical directors at Washington Corrections Center, Coyote Ridge Corrections Center, and Washington State Penitentiary; and (Count 2) the Department of Corrections. *Id.* at 6, 9. Mr. Fouts again claims that prison medical staff failed to adequately manage his pain. *Id.* at 6–7. According to Mr. Fouts, all x-rays go to the medical director for a "final say" in terms of treatment plan. *Id.* at 7. He attaches to his complaint an August 2014 final x-ray report indicating that he has (or at the time, had) mild osteopenia and a flattening of the left femoral head. Dkt. No. 12-1 at 1. The reporting physician recommended an MRI. *Id.*

Mr. Fouts alleges that the flattening of his left femoral head is responsible for his pain and that he "just rec[e]ntly found [this] out." Dkt. No. 12 at 7. However, he does not "know how the medical directors of all facilit[ies] . . . missed this because [he] had an x[-]ray done at all DOC facilit[ies] listed." *Id.* ("They told me my leg was fine the whole time."). Medical staff failed to

---

[2] Judge Tsuchida did not address Counts 3 or 4 of the amended complaint.

refer Mr. Fouts to a specialist despite his repeated complaints, kites, medical emergencies, and grievances. *Id.* at 8. He contends that, given their knowledge and experience, the x-ray technicians and medical directors should have seen his flattened left femoral head and identified this as the source of his pain. *Id.* Although Mr. Fouts is now being treated, he alleges that the flattening of his femoral head worsened through the June 20, 2022 period and "could [h]ave been fixed" with adequately-trained and knowledgeable staff. *Id.* He seeks $8 million in punitive and compensatory damages. *Id.* at 12.

In a letter attached to his complaint, Mr. Fouts clarifies that he discovered the 2014 x-ray report through a recent records request. Dkt. No. 24-2 at 1. He reiterates his disbelief that prison medical staff missed his flattened femoral head given "all the x[-]rays they did on [him]." *Id.* Finally, he conveys his belief that he has an Eighth Amendment deliberate indifference claim because he "had a doctor befor[e] this diagnose [him] and DOC [j]ust ignored it." *Id.* Mr. Fouts does not, however, "know who to sue" and does not "know what [he's] doing[.]" *Id.*

**D.    Judge Tsuchida's Report and Recommendation**

Judge Tsuchida once again found Mr. Fouts' complaint deficient. He recommends that the Court dismiss Count 2 with prejudice because Eleventh Amendment immunity shields the State of Washington and its agencies (including the Department of Corrections) from suit in federal court. Dkt. No. 13 at 2, 4–5. Moreover, neither the State of Washington nor the Department of Corrections is a "person" subject to suit within the meaning of Section 1983. *Id.* at 4–5.

As for Count 1, Judge Tsuchida recommends that the Court dismiss Mr. Fouts' claim against the unnamed medical directors without prejudice. *Id.* at 2, 8. He reiterated that Mr. Fouts must allege facts establishing "how individually named defendants caused or personally participated in causing the harm alleged in the complaint [because] a defendant cannot be held liable solely on the basis of [his or her] supervisory responsibility or position." *Id.* at 5. But as

Judge Tsuchida recognized in his R&R, Mr. Fouts' claim against the medical directors does not appear to be based on their supervisory role: "Instead, Plaintiff appears to allege [that] the Defendant medical directors should have known about the x-ray report attached to the second amended complaint, and their lack of awareness resulted in the denial of adequate medical care." *Id.*

Judge Tsuchida nonetheless identified several problems with this allegation. The Court, he explained, cannot serve a complaint on unnamed parties, and Mr. Fouts' second amended complaint contains no facts "identifying the individuals who served as the medical director[s] at the specific prisons in which [he] was held during the time period that falls within the statute of limitations: June 26, 2020, and May 26, 2022." *Id.* at 6. And even assuming that Mr. Fouts was imprisoned at all three correctional facilities within the statute of limitations, he provides no dates for when the defendants' acts or omissions occurred. *Id.* Judge Tsuchida took further issue with Mr. Fouts' reliance on the 2014 x-ray report because the x-ray at issue "was not taken while [Mr. Fouts] was in the custody of the DOC" and therefore was not "evidence [of] a DOC x-ray that the Defendants took and missed." *Id.* at 7 ("[T]he 2014 x-ray report itself does not provide support for [a] pain causing medical condition that was missed by the Defendants between June 2020 and May 2022, and Plaintiff presents no factual assertions that link the findings in the 2014 x-ray report with symptoms Plaintiff contends were not properly attended to[.]"); *see also id.* ("There are no facts showing [that] Defendants possessed the 2014 x-ray taken by the Mason County Sheriff, or that x-rays taken by the DOC revealed a condition the Defendants should have known about but failed to treat.").

Judge Tsuchida explained that his recommendation to dismiss Mr. Fouts' claim against the medical directors strikes a balance between the directive set forth in the IFP screening statute and the leeway a pro se plaintiff must be afforded in amending his complaint. *Id.* at 8. And because

1    Mr. Fouts had three opportunities to file a viable complaint but failed, he recommends that the

2    Court not provide a fourth chance. *Id.* ("Adoption of this course of action will not terminate all

3    possible avenues for relief in this matter because as noted above, a dismissal without prejudice

4    allows [Mr. Fouts] leeway to refile a new complaint assuming he has sufficient facts to support his

5    claims against the Defendant medical directors.").

6        Mr. Fouts filed timely objections. Dkt. No. 14.

7                                    **II.        DISCUSSION**

8        The Court agrees that Mr. Fouts' second amended complaint must be dismissed. Leave to

9    amend, however, will be granted.

10   **A.    Legal Standard for Reviewing a Report and Recommendation**

11       The Court "shall make a de novo determination of those portions of the report or specified

12   proposed findings or recommendations to which objection is made," and "may accept, reject, or

13   modify, in whole or in part, the recommendations made by the magistrate judge." 28 U.S.C. §

14   636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the

15   magistrate judge's disposition that has been properly objected to."). As the statute and rule suggest,

16   the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United*

17   *States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis original) ("Neither

18   the Constitution nor the statute requires a district judge to review, de novo, findings and

19   recommendations that the parties themselves accept as correct."); *accord Wang v. Masaitis*, 416

20   F.3d 992, 1000 n.13 (9th Cir. 2005).

21   **B.    Mr. Fouts' Objections**

22       Mr. Fouts' objections do not resolve or otherwise cure the deficiencies Judge Tsuchida

23   identified in his R&R. In fact, most relate to Mr. Fouts' purported need for counsel to prosecute

24

1  this case. *See* Dkt. No. 14 at 1–2. The Court construes these arguments as a renewed motion for

2  appointment of counsel and addresses them below in Section D.

3         Beyond that, Mr. Fouts reiterates that he recently came into possession of the 2014 x-ray

4  report and emphasizes that prison medical staff should not have missed his flattened femoral head.

5  *Id.* at 1–2. He argues that "it is deliberate indifference when a [d]octor finds something wrong and

6  other [d]octors [d]on[']t" because "you can[']t miss a femoral [h]ead flattening[.]" *Id.* at 2. Mr.

7  Fouts' complaint remains deficient because he fails to specify which staff at which facility caused

8  or personally participated in his misdiagnosis and mistreatment. *See Arnold v. IBM*, 637 F.2d 1350,

9  1355 (9th Cir. 1981) (a plaintiff must allege facts showing how the individually named defendants

10 caused or personally participated in causing the alleged harm). This defect alone is fatal.

11        To the extent Mr. Fouts claims that prison medical staff violated his constitutional right to

12 adequate medical care, his claim implicates the Eighth Amendment's proscription against cruel

13 and unusual punishment—not the Fourteenth Amendment. *See Sandoval v. Cnty. of San Diego*,

14 985 F.3d 657, 667 (9th Cir. 2021). Claims brought by convicted prisoners are governed by the

15 subjective deliberate indifference standard. *Id.*[3] "Under this standard, a prison official will be liable

16 for disregarding an inmate's serious medical needs only if he was both aware of facts from which

17 the inference could be drawn that a substantial risk of serious harm exists and actually drew the

18 inference." *Id.* at 667–68 (cleaned up); *see also Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th

19 Cir. 2016) ("[T]he plaintiff must show that the course of treatment the doctors chose was medically

20 unacceptable under the circumstances and that the defendants chose this course in conscious

21 disregard of an excessive risk to the plaintiff's health." (cleaned up)). Thus, "[e]ven if a prison

22

23 _____
   [3] In contrast, a claim that state officials violated a pre-trial detainee's right to adequate medical care arises under the
24 Fourteenth Amendment and implicates the *objective* deliberate indifference standard. *See Russell v. Lumitap*, 31 F.4th
   729, 739 (9th Cir. 2022); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122–25 (9th Cir. 2018).

ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED - 9

official *should* have been aware of the risk, if he was not, then he has not violated the Eighth Amendment, no matter how severe the risk." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (cleaned up).

Mr. Fouts' second amended complaint at best alleges negligence. And courts have made clear that "inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (per curiam); *see also, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (noting that "ordinary lack of due care" is insufficient (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The 2014 x-ray report (which predates Mr. Fouts' incarceration at the named facilities) does not plausibly establish that the defendant medical directors or any other unnamed medical staff acted with deliberate indifference. As Judge Tsuchida observed, that report says nothing about what subsequent prison x-rays revealed at the relevant times or what the medical directors subjectively knew at those times—let alone that they were aware of Mr. Fouts' ailment and consciously disregarded it.

The Court therefore overrules Mr. Fouts' objections. It dismisses Count 1 without prejudice and, as discussed below, with leave to amend. But Count 2 must be dismissed with prejudice because the State of Washington and the Department of Corrections are both immune from suit under the Eleventh Amendment. *See Pennhurst St. Sch. & Hosp.*, 465 U.S. 89, 100 (1984). And neither qualifies as a "person" within the meaning of Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

**C.    Leave to Amend**

The Court will permit Mr. Fouts a final opportunity to cure the deficiencies identified by Judge Tsuchida. Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give

1    leave when justice so requires." As the language of the rule suggests, the standard for leave to

2    amend is "very liberal," *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th

3    Cir. 2006), because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits,

4    rather than on the pleadings or technicalities," *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

5    (en banc) (cleaned up). A district court should therefore grant leave to amend even when, as here,

6    no request to amend the pleading was made, "unless it determines that the pleading could not

7    possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th

8    Cir. 2016) (cleaned up); *see also Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per

9    curiam) ("A district court should not dismiss a pro se complaint without leave to amend unless it

10   is absolutely clear that the deficiencies of the complaint could not be cured by amendment."

11   (cleaned up)).

12         Judge Tsuchida correctly observed that leave to amend may be denied when the plaintiff

13   has repeatedly failed to cure the deficiencies in the complaint. Indeed, a district court's discretion

14   to deny leave to amend is "particularly broad" in these circumstances. *City of Los Angeles v. San

15   Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (quoting *Ascon Props., Inc. v. Mobil Oil

16   Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). But a district court must generally consider four other

17   factors when deciding whether to grant or deny leave to amend: bad faith, undue delay, prejudice

18   to the opposing party, and futility. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708

19   F.3d 1109, 1117 (9th Cir. 2013). And here these other factors unanimously counsel in favor of

20   amendment. The Court discerns no evidence of bad faith or undue delay, and it does not see how

21   the (prospective) opposing parties would be prejudiced by providing Mr. Fouts another chance to

22   state a claim. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per

23   curiam) (prejudice to the opposing party "carries the greatest weight" and, absent prejudice or a

24   "strong showing" under the other factors, there is a presumption in favor of granting leave to

amend). Nor is it "absolutely clear" that Mr. Fouts' complaint cannot be cured with additional facts. Amendment therefore is not futile. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim" (cleaned up)).

Should Mr. Fouts elect to file a third amended complaint, the Court reminds him that he must produce "a short and plain statement of [his] claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). His pro se status does not excuse compliance with this bedrock requirement. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000) (explaining that the lenient pleading standard does not excuse a pro se litigant from meeting basic pleading requirements); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (although the court has an obligation to liberally construe pro se pleadings, it "may not supply essential elements of the claim that were not initially pled." (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982))). Rule 8(a)'s standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mr. Fouts must therefore do more than broadly allege that unnamed medical directors acted with deliberate indifference by failing to diagnose his flattened femoral head. To avoid dismissal under Sections 1915(e)(2) and 1915A, his claim must have "facial plausibility"; that is, his complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[4]

---

[4] Mr. Fouts should also specify whether he is suing the defendants in their personal or official capacities. The Court notes, though, that official-capacity suits are treated like actions against the State itself and therefore may not be asserted under Section 1983. *Will*, 491 U.S. at 71. The lone exception to this rule is when a plaintiff alleges that a government "policy or custom" played a role in the constitutional violation, and only when the plaintiff seeks injunctive or declaratory relief. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & n.14 (1985).

Mr. Fouts is not required to identify all defendants by name. If he "does not know the identities of certain individual defendants, 'he may name a fictitious, or Doe, defendant in place of each unknown defendant.'" *Tabb v. NaphCare*, No. 3:21-CV-05541-LK-TLF, 2023 WL 4638843, at *6 (W.D. Wash. July 20, 2023) (quoting *Figueroa v. Clark*, No. 1:19-CV-00968-BAM(PC), 2020 WL 13443325, at *13 (E.D. Cal. Feb. 6, 2020)). Although "Doe pleading" is generally disfavored, the Ninth Circuit has repeatedly recognized that "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). A plaintiff in that situation "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*; *accord Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).[5]

## D.    Appointment of Counsel

As noted above, Mr. Fouts' objections renew his request for appointment of counsel.[6] He asserts that this is his "first time" bringing a Section 1983 action and that he has "no idea how to state a claim or articulate . . . a complaint." Dkt. No. 14 at 1 ("I asked for a court appointed lawyer because even tho[ugh] I remember what happened[,] I can['t] reme[m]ber dates and names."). Mr.

---

[5] Mr. Fouts must therefore still allege what each Doe defendant did or did not do in violation of his rights. That is, his complaint must state a plausible claim for relief. In determining whether a plaintiff is entitled to discovery to ascertain a Doe defendant's identity, a district court generally examines whether the plaintiff (1) "identifies the Doe defendant with sufficient specificity that the Court can determine that the defendant is a real person who can be sued in federal court"; (2) "recounts the steps taken to locate and identify the defendant"; (3) "demonstrates that the action can withstand a motion to dismiss"; and (4) "proves that the discovery is likely to lead to identifying information that will permit service of process." *Williams v. Sinclair*, No. C19-5045-BHS-TLF, 2020 WL 3318296, at *9 (W.D. Wash. Feb. 28, 2020) (quoting *ZG TOP Tech. Co., Ltd. v. Doe*, No. C19-92-RAJ, 2019 WL 917418, at *2 (W.D. Wash. February 25, 2019)); *see also Corrigan v. Unknown King Cnty. Deputy #1*, No. C05-1727P, 2006 WL 2222331, at *3 (W.D. Wash. Aug. 2, 2006) (a complaint will be dismissed when a reasonable inquiry would have revealed the defendant's identity).

[6] A plaintiff should not lodge a motion for affirmative relief in his objections to a report and recommendation. *See Wilder on Behalf of C.H. v. Whitehouse*, No. 2:23-CV-00635-LK, 2023 WL 4418546, at *3 n.7 (W.D. Wash. July 10, 2023).

1    Fouts alleges that he cannot obtain the names of the medical directors because he lacks access to

2    and cannot afford to request copies of his prison medical records. *Id.* at 2. This, he says, is why he

3    needs an attorney. Mr. Fouts has apparently written to "dozens" of attorneys to no avail because

4    "no one wants to help someone out in jail." *Id.* He therefore asks the Court to appoint counsel so

5    that he can file his claim before the three-year limitations period expires. *Id.*

6        Appointment of counsel is inappropriate at this stage. "Unlike in criminal cases that

7    implicate the Sixth Amendment right to counsel, civil litigants who cannot afford counsel are not

8    constitutionally guaranteed the appointment of a lawyer." *Adir Int'l, LLC v. Starr Indem. & Liab.*

9    *Co.*, 994 F.3d 1032, 1039 (9th Cir. 2021). This remains true for cases involving Section 1983

10   claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). The Court does, however, have

11   discretion to "request" appointment of counsel for indigent litigants pursuant to section 1915(e)(1)

12   in "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th

13   Cir. 2004).[7] The exceptional-circumstances inquiry requires the Court to consider "the likelihood

14   of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light

15   of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir.

16   1986). Neither consideration is dispositive, and the Court must view them together. *Palmer v.*

17   *Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

18       Mr. Fouts has not shown that either consideration weighs in his favor. His unsuccessful

19   attempts to amend his complaint "evince[] little likelihood of success on the merits[.]" *Kryuchkov*

20

21   _____
     [7] Although courts often refer to motions under section 1915(e)(1) as motions to appoint counsel, "the statute does not

22   actually authorize the court to force a lawyer to take a case." *Sifuentes v. Nautilus, Inc.*, No. C21-5613-JLR, 2022 WL
     1014963, at *1 (W.D. Wash. Apr. 5, 2022) ("Nor does the court have staff attorneys standing by to represent *pro se*

23   litigants."). Under the statute, "the court may only 'request' that an attorney represent an indigent litigant." *Id.* (quoting
     28 U.S.C. § 1915(e)(1)); *see also Mallard v. U.S. Dist. Court.*, 490 U.S. 296, 307 (1989) (section 1915(e) does not
     authorize compulsory appointments); *Dragasits v. Rucker*, No. 18-CV-0512-WQH-AGS, 2021 WL 4710854, at *2

24   (S.D. Cal. Oct. 8, 2021) ("[T]he statutory authority to recruit civil counsel" does not allow the Court to "force attorneys
     to represent an indigent civil litigant.").

*v. Spain Street LLC*, No. C19-876-MJP, 2019 WL 2450798, at *2 (W.D. Wash. June 12, 2019). At the very least, the Court cannot fully weigh the merits of his claims on the undeveloped, limited record before it. *See Chan v. Ryan*, No. 22-CV-01796-LK, 2023 WL 197429, at *2 (W.D. Wash. Jan. 17, 2023). Nor does this case present the type of legally or factually complex issues that preclude Mr. Fouts from articulating his claims pro se. "[A] litigant must meet a high bar to show that the legal issues involved are sufficiently complex, and that he is therefore impeded in his ability to present his case." *Siglar v. Hopkins*, 822 F. App'x 610, 612 (9th Cir. 2020). Mr. Fouts appears to advance an Eighth Amendment deliberate indifference claim. Nothing about this legal theory or the underlying facts is "exceptionally complex." *Munywe v. Dier*, No. 3:21-CV-05431-BJR-JRC, 2022 WL 4466156, at *1 (W.D. Wash. Sept. 26, 2022); *see, e.g.*, *Agyeman*, 390 F.3d at 1103–04 (pro se prisoner's meritorious case had "triple complexity" that required skillful framing and advanced legal knowledge of *Bivens* actions, the Federal Tort Claims Act, and the Federal Bureau of Prisons' regulations).

Mr. Fouts' lack of legal knowledge, inexperience litigating Section 1983 claims, and struggles obtaining prison records are issues "common to *pro se* plaintiffs" and do not supply the exceptional circumstances necessary to justify appointment of counsel. *Trueblood v. Cappola*, No. 3:19-CV-05816-RBL-JRC, 2019 WL 6839338, at *1 (W.D. Wash. Dec. 13, 2019). And while Mr. Fouts suggests that "he requires counsel to assist him in identifying and locating various defendants," he "makes no effort to explain what efforts, if any, he has made to identify or locate the individuals he names or seeks to name as defendants." *Ejonga-Deogracias v. Dep't of Corr.*, No. C15-5784-RJB-TLF, 2018 WL 741415, at *2 (W.D. Wash. Feb. 7, 2018) (that prosecution of plaintiff's case might be easier with the assistance of counsel is not the test). His unsuccessful struggle to retain an attorney likewise does not qualify as an exceptional circumstance. *Curbow v. Clintsman*, No. 2:21-cv-1420-TLF, 2021 WL 5051662, at *1 (W.D. Wash. Nov. 1, 2021).

1

The Court therefore denies his renewed motion for appointment of counsel.

2

### III.  CONCLUSION

3

For the foregoing reasons, the Court ADOPTS Judge Tsuchida's R&R as modified, Dkt.

4

No. 13, and OVERRULES Mr. Fouts' objections, Dkt. No. 14. His renewed motion for

5

appointment of counsel is also DENIED. Count 1 of Mr. Fouts' second amended complaint is

6

DISMISSED without prejudice and with leave to amend; however, Count 2 is DISMISSED with

7

prejudice. Dkt. No. 12. Mr. Fouts may file a third amended complaint within 30 days of the date

8

of this Order remedying the deficiencies identified in Judge Tsuchida's R&R and this Order.

9

An amended complaint operates as a complete substitute for an original pleading. *See*

10

*Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010). Mr. Fouts' third amended complaint

11

must therefore clearly identify the defendant(s), the claim(s) asserted, the specific facts that he

12

believes support each claim, how each defendant participated in or caused the constitutional

13

violation at issue, and the specific relief requested. If a proper amended complaint is not filed

14

within 30 days of the date of this Order, the case will be closed. Furthermore, failure to cure the

15

identified deficiencies will result in dismissal without further leave to amend.

16

Dated this 5th day of October, 2023.

17

18

Lauren King
United States District Judge

19

20

21

22

23

24